24 C.C.P.A.(Patents)

## CAMPBELL v. EVANS.*

### Patent Appeal No. 3685.

Court of Customs and Patent Appeals.

Feb. 1, 1937.

Frank E. Liverance, Jr., of Grand Rapids, Mich., Donald M. Carter, of Chicago, Ill., John Boyle, Jr., of Washington, D. C., and Francis W. Parker, Jr., of Chicago, Ill., for appellant.

Howard W. Hodgkins, of Chicago, Ill., and E. W. Shepard, of Washington, D. C., for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the decision of the Examiner of Interferences awarding priority of invention as to all of the counts, Nos. 1, 2, 3, 4, and 6, to appellee, Edwin R. Evans.

The counts in issue originated in appellant's application.

Count 5, one of the counts before the Examiner of Interferences, was not included in appellant's appeal to the Board of Appeals, and therefore is not before us for consideration.

Count 1, so far as the issues here are concerned, is sufficiently illustrative of counts 1, 2, 3, and 4, which relate to the article of manufacture, to wit, a brake drum. It reads: "1. A brake drum comprising an outer supporting metal drum shell having a cylindrical drum flange of wrought steel, and a centrifugally cast metal continuous band located within and against said flange *having a continuous fused bond connection therewith at the inner and outer sides respectively of the drum shell and band."* (Italics ours.)

Count 6 is a process claim. It reads: "6. The process of lining a wrought preformed steel drum with cast iron which consists in heating the drum to a temperature above that at which contact between melted iron and the drum will cause solidification of the iron and below 1500° F., rotating the drum about its central axis, discharging a stream of melted iron against the inner periphery thereof, the speed of rotation being such that the melted iron is held by centrifugal force against the inner periphery of and is entirely supported by the drum in a continuous fluid ring, continuing the rotation of the drum until the melted iron has solidified *and has formed a continuous uniform fused union between the inner periphery of the drum and the resultant cast iron lining ring."* (Italics ours.)

The sole question before us is whether appellee has the right to make claims constituting the counts in issue.

Each of the tribunals of the Patent Office held that appellee's disclosure was sufficient to warrant him making the involved counts.

It is not denied by counsel for appellant that if appellee's disclosure is sufficient to warrant him making the counts in issue, he is entitled to an award of priority.

*Appellant's petition for rehearing denied March 29, 1937.

The sole issue in the case is whether appellee's disclosure is sufficient for the purpose mentioned. If it is, the decision of the Board of Appeals should be affirmed. If it is not, it should be reversed.

We come, therefore, to a more detailed discussion of the issues in the case, and the question is whether appellee disclosed in his application the features contained in the italicized language in the quoted counts, which are vital to the invention, that is "a continuous fused bond connection" between the cylindrical drum flange and the centrifugally cast metal band located within and against said flange.

The Examiner of Interferences was of opinion that appellee did make such disclosure.

The Board of Appeals affirmed the decision of the Examiner of Interferences.

Counsel for appellant state that: "If the decision of the Patent Office is sustained, a patent will be granted to Evans on a 'paper application' which, not only does not as filed disclose the invention of the issue, but does not have behind it any attempt toward actual reduction to practice of the other different invention which Evans actually did make, and which 'paper application' will dominate an intervening extensive industry, independently developed by Campbell at great expense, without any contribution thereto by Evans."

With reference to the invention counsel state that: "In making these brake drums, a metal shell, open at the side and having a cylindrical wall parallel to its central axis, is rotated about a horizontal axis and hot molten cast iron is poured into the shell and centrifugal force causes it to be evenly distributed over the inner face of the cylindrical wall. The hot iron, as used by Campbell, 3000° F., melts the surface of this steel wall, with which it comes into contact, and the steel and iron are fused together. The cooler iron of Evans, 2200° F., is not hot enough to melt the surface of the steel and the steel and the iron are not fused together."

It is argued by counsel for appellant that appellee never had the idea of fusing the "iron liner" to the steel shaft; that all he contemplated was a "shrink fit between the steel and the iron"; and that the temperatures mentioned in the Evans' application were not sufficient to warrant the conclusion that the surface of the steel and the iron were fused together so as to form what is known in the claims as a "fused bond" between the two.

It is stated by counsel for appellant in their brief that appellee was conversant with the well-known fact that it required a temperature of around 2500° F., to fuse the two metals above referred to.

Each of the tribunals of the Patent Office was of opinion that the failure of appellant to successfully reduce appellee's invention to practice in its tests was because he deliberately refused to include the ordinary flux, which, although not mentioned in appellee's disclosure, was recognized by all skilled in the art as necessary to the making of a "fused bond" or a "fusion," within the meaning of the involved counts.

We deem it unnecessary to enter upon a lengthy discussion relative to the issues here involved. We think it is sufficient to quote from the decision of the board, wherein, among other things, it was said:

"The Evans application as filed, after discussing the prior art and the advantage of using cast iron as a braking surface, specified that it is an object of his invention:

"'To provide a method of forming such drums by casting the iron into the steel in such manner as to prevent the parting of the bond between the cast iron and the steel due to the variation in the shrinkage of the cast iron during the cooling operation.'

"He also states in the following paragraph as a further object the provision of a method involving raising the temperature of the steel drum before casting 'to insure a better bond.'

"On page 5 of the original specification, after mentioning the temperature of the iron, he states:

"'If the steel shell is raised to approximately the temperature specified above (1200° to 1500° F.) before casting, the iron and steel will be *burned together* sufficiently to form an effective joint.'" (Italics not quoted.)

The board held that the word "burned," employed in appellee's application, is the equivalent of "fusion" or a "fused bond" connection, and quoted definitions in support thereof.

After a careful examination of those definitions, we deem it unnecessary to quote them here.

We are of opinion that appellee's disclosure was sufficient to warrant the tribu-

nals of the Patent Office in holding that he disclosed the invention set forth in the involved counts; that his specification was sufficient to warrant making the claims constituting the counts in issue; and that, in view of the fact that no claim was made by appellant that he was entitled to priority if appellee could make the counts here involved, the Board of Appeals reached the right conclusion.

For the reasons stated, the decision of the Board of Appeals is affirmed.

Affirmed.

LENROOT, Associate Judge, concurs in conclusion.